**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI, OHIO**

**United States of America**                          **Case No.: 1:19-cr- 081**

**-vs-**

                                                                                 **Judge Matthew W. McFarland**

**Anthony Rattini (1),**
**James Barclay (2),**
**Devonna Miller-West (3),**
**Samuel R. Ballengee (4)**
**and Miami-Luken, Inc. (5),**

**Defendants.**

**Defendants Mr. Rattini, Mr. Barclay and Miami-Luken, Inc.'s Motion to Dismiss the Indictment as Facially Defective, or in the Alternative, for an _In Camera_ Inspection of the Grand Jury Instructions of Law and DEA Investigators Grand Jury Material**

       The Defendants, Mr. Rattini, Mr. Barclay and Miami-Luken, Inc. ("Miami-Luken Defendants") respectfully move this Honorable Court, in accordance with Rule 12(b)(3)(v) Fed. R. Crim. P. to dismiss the Indictment as facially defective, or in the alternative, to review _in camera_ the jury instructions given to the grand jury along with certain other specifically described grand jury material or provide a copy of the grand jury material to the Miami-Luken Defendants.[1] The Rannazzisi Letters, as described and argued in the Miami-Luken defendants' contemporaneous motion to dismiss put before the grand jury inaccurate and improper instructions concerning the law, as well as other similarly misinformed grand jury testimony that directly led to the wrongful indictment of the Miami-Luken Defendants.  A memorandum of law supporting

---

[1] The Grand Jury Instructions of Law and other specifically described grand jury material may be the subject of an additional motion once the instructions are studied by Miami-Luken Defendants counsel.

this position is set forth below, and for the Court's convenience, the arguments set forth in the Miami-Luken defendants' motion to dismiss are incorporated herein by reference in support of this motion.

Respectfully Submitted

/s/ Kevin R. Conners
Kevin R. Conners (0042012)
PETERSON, CONNERS LLP
545 Metro Place South, Suite 435
Dublin, OH 43017
Telephone: (614) 745-8843
Facsimile: (614) 220-0197
E-mail:kconners@petersonconners.com
Trial Counsel for Defendant Anthony Rattini

## Memorandum in Support

### I.        Grand Jury Proceedings

"For a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public mind, the blot on a man's escutcheon, resulting from such a public accusation of wrongdoing, is seldom wiped out by a subsequent judgment of not guilty. Frequently, the public remembers the accusation, and still suspects guilt, even after an acquittal". *In re Fried,* 161 F.2d 453, 458-459 (2d Cir.1947).

"[R]ooted in long centuries of Anglo-American history," [2] the grand jury is mentioned in the Bill of Rights, but not in the body of the Constitution. It has not been textually assigned, therefore, to any of the branches described in the first three Articles. It "'is a constitutional fixture in its own right.'" *United States v. Chanen*, 549 F. 2d 1306, 1312 (CA9) (quoting *Nixon v. Sirica*, 159 U. S. App. D. C. 58, 70, n. 54, 487

---

[2]Hannah v. Larche, 363 U. S.420, 490 (1960) (Frankfurter, J., concurring in result).

F. 2d 700, 712, n. 54 (1973)), *cert. denied*, 434 U. S. 825 (1977). In fact, the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. *United States v. Williams*, 504 U.S. 36, 47 (1992).

The Supreme Court has "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Nw.* 441 U.S. 211, 218, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979). Federal Rule of Criminal Procedure 6(e) "codifies the rule that grand jury activities generally be kept secret." *See In re Special Grand Jury (Anchorage, Alaska)*, 674 F.2d 778, 779 n.1, 781 (9th Cir. 1982) ("*Alaska Grand Jury*"). An exception to the grand jury secrecy rule is relevant here. A defendant can overcome Rule 6(e)'s presumption in favor of protecting the secrecy of any "matter occurring before the grand jury" by showing a "particularized need" for disclosure. *See* Fed. R. Crim. P. 6(e); *Douglas Oil*, 441 U.S. at 228.

## II. Dismissal of the Indictments is the Proper Remedy

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v United States*, 487 U.S.250, 254, 108 S. Ct. 2369, 2373 (1988); *United States v. O'Keefe*, *supra*; *United States v Pettway*, 129Fed. Appx. 583 (11th Cir. 2005). Prejudice means that the violation "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256, 108 S. Ct. at 2374. Here prejudice has taken place by substantially injecting before the grand jury the Rannazzisi letters as having the force of law when, in fact, they are not an act of Congress. The letters are DEA's own ambitious interpretation of its statutes and regulations.

3

The Indictment, on its face, demonstrates clear error before the grand jury, even if unintended, because it references legal obligations and standards that simply do not exist in the law. By referencing – and instructing the grand jury upon – non-existent obligations that bear criminal consequences, it logically follows that the grand jury was impermissibly influenced by and the resulting true bill is not true at all. It must be dismissed as facially defective. Accordingly, there can be no other remedy than dismissal. It is submitted that the Court has ample justification to reach this decision based upon the face of the Indictment alone. In an exercise of prudence, however, the Court may want to review the Instructions and testimony *in camera*, and if still unsure, release those instructions transcripts to the defendants for further briefing.

### III. Erroneous Grand Jury Instructions Prevented the Grand Jury from Discharging its Constitutional Function

The United States Attorney for the Southern District of Ohio, on October 21, 2019, in a Department of Justice Press Release, highlight the Miami-Luken case as one of his "most significant or noteworthy cases pursued under his leadership": "one of only two criminal cases in the nation against an opioid wholesaler and its executives." Department of Justice Press Release Monday, October 21, 2019. Exhibit A. For such a significant or noteworthy case breaking new legal barriers in the United States, the Department of Justice has the constitutional obligation to provide the grand jury legally correct instructions of law before an indictment is returned. Erroneous grand jury legal instructions prevented this grand jury from discharging its constitutional function of determining whether there is probable cause to believe the Miami-Luken Defendants committed a criminal offense. The government's desire to "fill in the DEA legal duty gaps" left by Congress under the CSA with the Rannazzisi Letters dominates this case. The Rannazzisi Letters have invaded and invalidated the grand jury instructions.

Courts have "found error where the government incompletely or erroneously provides legal instruction to the grand jury." *United States v. Hoey*, No. S3 11-CR337 PKC, 2014 WL 2998523, at *3,

2014 U.S. Dist. LEXIS 91093 (S.D.N.Y. July 2, 2014); accord *United States v. Monzon-Luna*, No. 11-cr-722 (RRM), 2014 WL 223100, at *1-3, 2014 U.S. Dist. LEXIS 7415 (E.D.N.Y. Jan. 21, 2014); *United States v. Fleurissaint*, No. 03-cr-906 (RPP), 2004 WL 2101922, at *3-4, (S.D.N.Y. Sept. 21, 2004). *Twersky*, 1994 WL 319367, at *4, 1994 U.S. Dist. LEXIS 8744; cf. *Brito*, 907 F.2d at 394-96 (scrutinizing prosecutor's "questionable instructions" to the grand jury concerning hearsay).[3]

"It is well-settled that a defendant seeking disclosure of grand jury minutes has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations." *United States v. Forde*, 740 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (citing *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978). "[The Rule 6(e)(3)(E)(ii) requirement of showing a ground to dismiss the indictment because of a matter before the grand jury] extends to legal instructions given to the grand jury." *United States v. Jailall*, 00-cr-69 (RWS), 2000 U.S. Dist. LEXIS 13733, 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000) (Sweet, J.). However, courts have found error where the government incompletely or erroneously provides legal instruction to the grand jury. *See United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990), *United States v. Kasper*, 10-cr-318 (HBS), 2011 U.S. Dist. LEXIS 152388, 2011 WL 7098042, at *7 (W.D.N.Y. June 20, 2011).

Where the government endeavors to provide the grand jury legal instructions but does so incompletely or erroneously, courts have found error. *See Kasper*, 2011 U.S. Dist. LEXIS 152388, 2011 WL 7098042, at *7; *see also U.S. v. Brito*, 907 F.2d 392 (2d Cir. 1990). Thus, some courts have dismissed indictments where the prosecutor affirmatively gave erroneous legal advice to the grand jury which led to "grave doubt that the decision to indict was free from the substantial influence of such violations." *See, e.g., U.S. v. Stevens*, 771 F. Supp. 2d 556, 2011 WL 1033707 (D. Md. 2011) (dismissing indictment without prejudice where prosecutor gave erroneous advice to grand jury on advice-of-counsel defense that negated

---

[3] Where the elements of a crime are not obvious from (or even mentioned in) the statutory text, reading the statute without explaining the elements will mislead and misinform the grand jury in violation of the Fifth Amendment. See, e.g., 18 U.S.C. § 1346 (defining the term "scheme or artifice to defraud" as including "a scheme or artifice to deprive another of the intangible right of honest services"). In any event, once a prosecutor provides a grand jury with legal instructions, those instructions must be accurate and complete. See Monzon-Luna, 2014 WL 223100, at *1-3.

wrongful intent); *U.S. v. Peralta*, 763 F. Supp. 14, 19-20, 21 (S.D.N.Y. 1991) (dismissing indictment where prosecutor's instructions to the grand jury did not "merely fail to instruct the grand jury on a question of applicable law," but rather "seriously misstated the applicable law" on constructive possession); *U.S. v. Cerullo*, No. 05-cr-1190, 2007 U.S. Dist. LEXIS 101358, 2007 WL 2462111 (S.D. Cal. Aug. 28, 2007) (explaining that although it was "leery of imposing upon the Government a duty to accurately instruct the grand jury on every relevant legal issue in presenting a case for indictment," because the grand jury repeatedly asked how to distinguish a gift from earnings and the prosecutor repeatedly failed to properly instruct them, the prosecutor committed error that prejudiced the defendant).

Courts will dismiss the indictment if "the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quotation marks omitted). Indeed, several courts have dismissed indictments based, at least in part, on erroneous or misleading legal instructions:

- *United States v. Bowling*, 108 F. Supp. 3d 343, 352-53 (E.D.N.C. 2015) (dismissing multiple counts where "the government's erroneous legal instruction to the grand jury concerning the Procurement Integrity Act played a significant and impermissible role in the grand jury's decision to indict");

- *United States v. Stevens*, 771 F. Supp. 2d 556, 564-68 (D. Md. 2011) (dismissing indictment where prosecutor gave erroneous advice to grand jury on advice-of-counsel defense that negated wrongful intent);

- *United States v. Cerullo*, No. 05-cr-1190, 2007 U.S. Dist. LEXIS 58142, 2007 WL 2462111, at *2-4 (S.D. Cal. Aug. 28, 2007) amended by 2007 U.S. Dist. LEXIS 101358 (dismissing indictment where prosecutor's failure to accurately and fairly explain an important legal issue "misled the grand jury" and "prejudiced the Defendant");

- *United States v. Breslin*, 916 F. Supp. 438, 442-47 (E.D. Pa. 1996) (dismissing indictment on several grounds but finding "most disturbing" the prosecutor's erroneous instruction regarding the grand jury's deliberation on a conspiracy charge).

- *United States v. D'Alessio*, 822 F. Supp. 1134, 1135-36, 1145-46 (D.N.J. 1993) (dismissing counts of indictment because the grand jury was erroneously "advised by the government" as to the law).

- *United States v. Peralta*, 763 F. Supp. 14, 17-21 (S.D.N.Y. 1991) (dismissing indictment where there was "grave doubt that the decision to indict was free from the substantial influence" of the prosecutor's "misleading statements of the law" regarding constructive possession of a firearm);

- *United States v. Vetere*, 663 F. Supp. 381, 383-84, 386-87 (S.D.N.Y. 1987) (dismissing indictment because of the prosecutor's misleading "presentation both with respect to the facts and the law").

- *United States v. Roberts*, 481 F. Supp. 1385, 1389-90 & n.10 (C.D. Cal. 1980) (dismissing indictment in part because of "erroneous "instructions about the admissibility of polygraph evidence).

- *United States v. Braniff Airways, Inc.*, 428 F. Supp. 579, 586 (W.D. Tex. 1977) (dismissing indictment and finding that erroneous instructions deprived the grand jury of "the complete picture to which it is entitled for a proper decision").

- *United States v. Peralta,* 763 F. Supp. 14, 19 (S.D.N.Y. 1991) (indictment dismissed where government's instruction on law were erroneous and misleading).

IV.     **The Court Should Direct the Government to Provide the Grand Jury Instructions to the Court for an In-Camera Inspection**

The Court can preserve grand jury secrecy by inspecting the instructions *in camera* to determine whether disclosure is warranted. Courts regularly use this procedure in assessing defendants' challenges to the accuracy of grand jury instructions. See, e.g., *United States v. Bravo-Fernandez*, 239 F. Supp. 3d 411, 412-13, 415-17 (D.P.R. 2017) (ordering in camera review of grand jury instructions after First Circuit vacated convictions because trial jury was erroneously instructed on elements of § 666); *United States v.*

7

*FedEx Corp.*, No. C14-380 CRB, 2016 U.S. Dist. LEXIS 6155, at *2, *13-15 (N.D. Cal. Jan. 19, 2016) (inspecting grand jury instructions *in camera* and then granting defendant's motion for disclosure of instructions); *Hoey*, 2014 U.S. Dist. LEXIS 91093, 2014 WL 2998523, at *3 (ordering *in camera* review of grand jury instructions because of a significant "change in the law" made it possible that "the grand jury did not receive the possible instructions"); *United States v. Ceneus*, No. 10-CR-27-SPM/GRJ, 2011 U.S. Dist. LEXIS 131813, 2011 WL 5547107, at *2 (N.D. Fla. 2011) (ordering in camera review of "non-testimonial portions of the grand jury proceedings" to assess whether the prosecutor "improperly instructed the grand jury"); *Stevens*, 771 F. Supp. 2d at 564, 568 (dismissing indictment after ordering in camera review of grand jury transcripts, including instructions); *United States v. Ho*, No. CRIM. 0800337 JMS, 2009 U.S. Dist. LEXIS 73763, 2009 WL 2591345, at *3-5 (D. Haw. Aug. 20, 2009) (inspecting grand jury instructions *in camera* because the prosecutor had made "on-the-record statements" reflecting a misunderstanding of a necessary element and, as a result, the court could not "rule out that the government did not properly instruct the grand jury"); *Twersky*, 1994 U. S. Dist. LEXIS 8744, 1994 WL 319367, at *4-5 (ordering in camera review to determine whether jury instructions were correct in light of intervening Supreme Court decision); *Peralta*, 763 F. Supp. at 15-21 (dismissing indictment following in camera review of erroneous instructions to the grand jury).

While matters occurring before the grand jury are "entitled to a presumption of secrecy." *United States v. Ulbricht*, 858 F.3d 71, 107 (2d Cir. 2017) the court "may authorize disclosure . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E). The defendant can overcome the presumption by showing a "particularized need that outweighs the need for secrecy"—that is, by showing that (1) "the material . . . is needed to avoid a possible injustice," (2) this need "is greater than the need for continued secrecy," and (3) the "request is structured to cover only material so needed." *Ulbricht*, 858 F.3d at 107 (quotation marks omitted). "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.* 441 U.S. 211, 223 (1979).

V.      **The Rannazzisi Letters Formed the Basis for the Improper Instructions of Law Given to the Grand Jury**

The Miami-Luken Defendants filed an extensive brief outlining the improper use of the Rannazzisi Letters by the DEA in an attempt to amend the suspicious orders provisions of the CSA and its regulations without a lawful Act of Congress and without following the Administrative Procedures Act. The Department of Justice and DEA indicted the Miami-Luken Defendants based upon the "due diligence" and "due care" concepts in the Rannazzisi Letters and not based upon the applicable statute or regulations.

A. **Particularized Need to Avoid Possible Injustice**

1. **The Grand Jury Instructions Are Needed to Avoid Possible Injustice as the Government impermissibly relies upon agency interpretation of its own ambiguous regulations and the statute.**

The Government impermissibly relies upon agency interpretation of its own ambiguous regulations and the statute to define a new theory to overcome the "[e]xcept as otherwise authorized" proviso contained in 21 U.S.C. § 841 and criminalize otherwise lawful conduct. Sixth Circuit Judge Jeffery Sutton prophesied the exact facts of this case in his concurrence of his own majority opinion in *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 730 (6th Cir. 2013). No other possible review can be undertaken, other than an in-camera review, of the Jury Instructions to the Grand Jury to find out if impermissible jury instructions were given to the Grand Jury regarding the Miami-Luken Defendant.   If incorrect jury instructions were given to the Grand Jury, on this new theory adopted by the DEA and DOJ, which is only the 2nd case in the United States since the CSA was enacted in 1970, then dismissal of the indictment is constitutionally necessary and appropriate.

For years, the distributor industry had complained about the vague company responsibilities under the suspicious orders provisions of the CSA. The Rannazzisi letters were

designed to "fill in the suspicious orders details" such that the DEA could take action which Congress never authorized. D. Linden Barber, DEA Associate Chief Counsel, worked with Mr. Rannazzisi at the DEA. Mr. Barber and Mr. Rannazzisi decided to target wholesale drug distributors. Scott Higham and Lenny Bernstein, *The Drug Industry Triumph over the DEA*, Washington Post, Oct. 15, 2017, at p. 13. Mr. Barber would later admit to the Washington Post "I developed the legal framework to pursue actions against distributors." Id. at 14. Mr. Barber said "[w]e initiated a record number of administrative actions; the government collected record-setting civil penalties." Id. at 14. Record setting civil penalties obtained through administrative actions must encompass far different legal principles than taking one's liberty based upon a "warning letter".

### 2. DEA Investigators impermissibly testified before the grand jury regarding DEA's own ambitious interpretation of its statutes and regulation as the Indictment and the Rannazzisi Letters Permeate the Indictment

The "particularized need" for disclosure of grand jury materials is rooted in the Rannazzisi Letters. The Letters expansive concepts of "due diligence" and "due care" impose upon a distributor, new duties created not by Congress, but by the DEA. The indictment rings "verse after verse" of the Rannazzisi Letters themes of "due diligence" and "due care".

For example, the indictment at ¶ 9 states:

The DEA is responsible for enforcing the CSA and its implementing regulations by conducting audits and inspections, reviewing sales data and suspicious order reports, and issuing guidance to registrants, as necessary. In 2006 and again in 2007, the DEA issued two letters to all registered distributors outlining the **specific obligations of distributors**. Specifically, the 2006 letter articulated "[i]n addition to reporting suspicious orders, a distributor has the statutory responsibility to exercise due diligence to avoid filing suspicious orders that might be diverted into other than legitimate medical, scientific and industrial channels." Rannazzisi letter (2006). Further, the 2007 letter articulated a distributor's obligation to "conduct an **independent analysis** of suspicious orders prior to completing a sale to determine whether controlled substances are likely to be diverted from legitimate channels". Rannazzisi letter (2007). The letter further explained the

[r]eporting an order as suspicious w[ould] not absolve the registrant of responsibility if the registrant **knew, or should have known**, that the controlled substances were being diverted." Rannazzisi letter (2007). (emphasis added).

The indictment at ¶ 25 states:

It was further part of the conspiracy that defendants **ANTHONY RATTINI, JAMES BARCLAY and MIAMI LUKEN** failed to maintain effective controls against diversion of controlled substances, failed to report suspicious orders to the DEA, and continued to ship the dangerous addictive drugs to pharmacies in rural Appalachia where the opioid epidemic was at its peak.

The indictment at ¶ 28 states:

It was further part of the conspiracy that defendants **ANTHONY RATTINI, JAMES BARCLAY and MIAMI LUKEN** failed to maintain effective controls against diversion, and failed to exercise **due care** in confirming the legitimacy of all orders by continuing to supply millions of dosage units of oxycodone and hydrocodone to **DEVONNA WEST- MILLER, SAMUUEL R. BALLENGEE** and other unnamed physicians, pharmacists and pharmacies known to the Grand Jury.

Despite the fact that the Acting DEA Administrator Rosenberg declared in the Federal Register on September 15, 2015, that the Rannazzisi Letters were "never intended to have binding effect", Rannazzisi 1 introduces the new concept of "due diligence" into the distributor's obligations under the CSA.

Thus, in addition to reporting all suspicious orders, a distributor has a statutory responsibility to exercise **due diligence** to avoid filling suspicious orders that might divert into other than legitimate medical, scientific, and industrial channels. Failure to exercise such **due diligence** could, as circumstances warrant, provide a statutory basis for revocation or suspension of a distributor's **registration**.[4] (Emphasis Added). Exhibit B at p. 2. Rannazzisi 1 thus injects the new concept of "due care" into the CSA.

In a similar vein, given the requirement under section 823(e) that a distributor maintain effective controls against diversion, a distributor may not simply rely on the fact that the person placing the suspicious order is a DEA registrant and turn a blind eye to the suspicious circumstances. Again, to maintain effective controls against diversion as section 823 (e) requires, the distributor should exercise **due care** in confirming the legitimacy of all orders prior to filing. Exhibit C, at p. 2. (emphasis added).

---

[4] Even Rannazzisi 1 did not contemplate that a failure to exercise "due diligence" would warrant a criminal indictment. Rannazzisi 1 "warned" the distributor industry that a failure to exercise due diligence could "provide a statutory basis for revocation or suspension of a distributor's registration." Exhibit C at p. 2.

The DEA investigators who testified before the Grand Jury surely "spiced" up the CSA and its regulations to be "dripping" with Rannazzisi concepts of "due care" and "due diligence." These letter obligations, which were sent to all distributors throughout the United States, do not elevate these concepts to the force of law.  It is interesting that the CSA has existed for 50 years, but this is only the 2nd case ever brought under the CSA against a distributor.[5] The Rannazzisi duties, which are not a congressionally passed law, are improper for DEA investigators to bring before the Grand Jury "as if" these letters concepts of due diligence and due care carried the force of law. It is this precision within which the Court must examine, *in camera*, the Grand Jury transcripts to determine if the letters tainted the Grand Jury. The DEA must stick to the existing law and not seek to expand legal duties to letters which have no binding effect. Criminal indictments should not be based upon DEA investigators "spinning" the letters to the same status as a law passed by Congress. Grand Jury testimony, by DEA investigators, based upon "due diligence" and "due care" defined by the Rannazzisi Letters are an impermissible definition of the law which underpins the indictments. The letters, according to DEA Acting Administrator Rosenberg, were only "warning letters" and "never intended to have binding effect".[6]

### 3. The need for an *In Camera* Inspection is greater than the need for continued secrecy

An in-camera inspection will conclusively determine if inappropriate jury instructions and aggressive DEA investigators were able to "spin" the Rannazzisi Letters to the Grand Jury. If such jury instructions and testimony do not follow the law, then dismissal of the indictment is proper. Otherwise a

---

[5] This case is only "one of only two criminal cases in the nation against an opioid wholesaler and its executives." Department of Justice Press Release Monday, October 21, 2019. Exhibit A.
[6] 80 FR 55418, at 55475.

criminal trial will proceed against the Miami-Luken Defendants for engaging in completely lawful conduct under the CSA. Secrecy of the Grand Jury can be maintained with an *in camera* review. The Court, and the Court alone, will decide if the jury instructions and DEA investigators' testimony should be shared with Miami-Luken Defendants' Counsel.  If the Court determines further briefing is in order based upon the Grand Jury Instructions and DEA investigators testimony, the Court is best suited to make that determination.

**4.     This request is structured to cover only specific material so needed**

The request for the Grand Jury Instructions and DEA investigators testimony is specific and very narrow. The request is to provide:

1. Grand Jury Instructions of Law; and

2. DEA investigators testimony to the Court for an in-camera review.

**VI.  Conclusion**

The Miami-Luken Defendants respectfully move this Court to review, *in camera*, the Grand Jury Instructions of Law and the DEA investigators testimony to determine if the Rannazzisi letters impermissibly entered the Grand Jury process.

Respectfully Submitted

/s/ Kevin R. Conners
Kevin R. Conners (0042012)
PETERSON, CONNERS LLP
545 Metro Place South, Suite 435
Dublin, OH  43017
Telephone: (614) 745-8843
Facsimile:  (614) 220-0197
E-mail:kconners@petersonconners.com
Trial Counsel for Defendant Anthony Rattini

13

<u>Certificate of Service</u>

I certify that a true copy of the foregoing pleading was filed and served electronically upon all counsel of record through the Court's ECF system on April 30, 2020.


/s/ Kevin R. Conners
Kevin R. Conners (0042012)